UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STIRLING CIVIL ENGINEERING
LIMITED,

                    Plaintiff,

        v.                                          No. _____

GOVERNMENT OF THE UNITED
REPUBLIC OF TANZANIA,

                    Defendant.

## COMPLAINT

Plaintiff Stirling Civil Engineering Limited ("Stirling"), by its attorneys MoloLamken

LLP, brings this Complaint against Defendant Government of the United Republic of Tanzania

("Tanzania"), alleging as follows:

## NATURE OF THE PROCEEDING

1.      This is an action under the District of Columbia's Uniform Foreign-Country

Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371, to recognize and

enforce foreign money judgments rendered in the United Kingdom and the Netherlands against

Tanzania as a result of Tanzania's failure to pay arbitral awards rendered against it.

2.      On November 19, 2015, the High Court of Justice, Queen's Bench Division,

Commercial Court, in the United Kingdom entered judgment against Tanzania in *Stirling Civil*

*Engineering Ltd. v. United Republic of Tanzania*, No. CL 2015 000745 (the "English

Judgment"). A copy of the English Judgment is attached as Exhibit A. That judgment directs

Tanzania to pay £505,537.66, US$329,984.78, €24,236,919.65, and Tshs 14,373,695,574.87,

plus costs and interest. On July 20, 2017, the English court issued a further order stating that the

1

time to apply to vary or discharge the English Judgment had expired and that the English

Judgment was a final and enforceable judgment.  A copy of that order is attached as Exhibit B.

3.      On December 20, 2016, the Hague Court of Appeals, Civil Division, in the

Netherlands entered judgment against Tanzania in *Stirling Civil Engineering Ltd. v. United*

*Republic of Tanzania*, No. 200.193.379/01 (the "Dutch Judgment").  A copy of the Dutch

Judgment, together with a certified translation, is attached as Exhibit C.  The Dutch Judgment

recognizes the arbitral awards in the Netherlands and grants Stirling leave to enforce them.

4.      Despite those two binding judgments, Tanzania has refused to pay the amounts it

owes.  Stirling therefore brings this action for recognition and enforcement of the two judgments

under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act.

## PARTIES

5.      Plaintiff Stirling Civil Engineering Limited is a corporation incorporated in

England and Wales, whose registered office is at 310 Harrow Road, Wembley, Middlesex, HA9

6LL, United Kingdom.

6.      Defendant Government of the United Republic of Tanzania is a foreign sovereign.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action against a foreign

sovereign pursuant to 28 U.S.C. § 1330(a).

8.      Tanzania is not entitled to sovereign immunity in this enforcement action because

it implicitly waived its immunity by agreeing to arbitrate the underlying dispute that led to the

judgments at issue.  Accordingly, this matter falls within the waiver exception to immunity set

forth in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(1).

9.      Tanzania also is not entitled to sovereign immunity because this is an action to recognize and enforce foreign judgments arising out of arbitral awards.  Accordingly, this matter falls within the Foreign Sovereign Immunities Act's exception for arbitral enforcement, 28 U.S.C. § 1605(a)(6).

10.     This Court has personal jurisdiction over Tanzania pursuant to 28 U.S.C. § 1330(b) because Tanzania is a foreign sovereign; it is not entitled to immunity for the reasons set forth above; and it will be duly served as provided by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a).

11.     Venue is proper in this district under 28 U.S.C. § 1391(f)(4).

## STATEMENT OF FACTS

### *The Underlying Dispute*

12.     This dispute originated from a May 7, 1999 public works contract between Stirling's predecessor-in-interest, Impresa Ing. Fortunato Federici SpA ("IFF"), and the Republic of Tanzania.  In that contract, IFF agreed to rehabilitate a 43-kilometer section of road between Dar es Salaam and Bagamoyo, Tanzania.

13.     Tanzania received funding for the project from the European Union's European Development Fund.  As a result, the contract incorporated the European Development Fund's *Procedural Rules in Conciliation and Arbitration of Contracts Financed by the European Development Fund*, which require that any disputes arising out of the contract be arbitrated under European Development Fund rules.

14.     Throughout the course of the parties' agreement, Tanzania took multiple actions that increased IFF's costs and frustrated its ability to perform the contract.  For example, Tanzania unexpectedly changed the design specifications for certain bridges and then delayed approving the revised designs.  Further delays resulted from unlawful pipe connections not

disclosed during the tender process, as well as graveyards along the proposed path of the road. Tanzania also directed the use of an improper gravel sub-base for a portion of the road, which led to still more delays while the resulting problems were investigated and remediated.  To make matters worse, Tanzania refused to pay various amounts it owed under the contract, purportedly on the basis of the foregoing delays – even though those delays were Tanzania's own fault.

15.    On May 25, 2004, a notice of arbitration was served on Tanzania seeking compensation for the losses suffered as a result of Tanzania's misconduct.  The notice was nominally served on behalf of IFF, although Stirling was later substituted as the proper claimant on the ground that it had acquired IFF's construction business and rights under the contract.  An arbitral tribunal was appointed pursuant to the European Development Fund rules, and protracted proceedings followed.

16.    On December 10, 2009, the arbitral tribunal issued a Second Corrected Partial Award in favor of Stirling that resolved all issues except costs and interest.  That award found that Tanzania was responsible for the delays incurred under the contract and directed Tanzania to pay Stirling damages in the amounts of €8,646,838.31 and Tshs 2,269,133,920.

17.     On June 10, 2010, the arbitral tribunal issued its Final Award on costs and interest.  That award directed Tanzania to pay Stirling additional amounts of €9,808,022, £355,587.53, US$232,106, and Tshs 7,841,095,868 in costs and interest.  The tribunal also directed Tanzania to pay post-award interest at 8% per annum starting 28 days after the award.

18.    On November 16, 2010, the European Union paid Stirling €1,407,000 in connection with the awards.  But Tanzania has persistently failed to pay any other portion of the amount due.  Over the past seven years, Stirling and Tanzania have engaged in a series of

4

discussions over Tanzania's obligation to satisfy the awards.  Tanzania has not denied its liability

for the awards but has repeatedly failed to appropriate the necessary funds to pay them.

### *United Kingdom Enforcement Proceedings*

19.	Given Tanzania's failure to satisfy the awards voluntarily, Stirling's only hope of

obtaining compensation for its losses has been to seek judgments enforcing the awards in various

jurisdictions where Tanzania may have attachable assets.

20.	On October 15, 2015, Stirling applied to the High Court of Justice, Queen's

Bench Division, Commercial Court, in the United Kingdom for a judgment enforcing the awards.

21.	On November 19, 2015, the High Court entered an order granting permission to

enforce both the Second Corrected Partial Award and the Final Award.  The order entered

judgment against Tanzania and in favor of Stirling in the amounts of €24,236,919.65,

£505,537.66, US$329,984.78, and Tshs 14,373,695,574.87.  The court also assessed costs

against Tanzania in the amount of £3,500 and directed that post-judgment interest would accrue

until payment at the rate specified by the United Kingdom's Judgment Act.  The total amount

due under the English Judgment now exceeds $41.4 million.

22.	The High Court directed Stirling to serve Tanzania with the order at various

addresses.  The court stayed enforcement of the judgment until six weeks after the completion of

service.  Finally, the court provided that Tanzania could apply to vary or discharge the order

upon notice to Stirling.

23.	Stirling completed service on Tanzania on January 20, 2016.  That service

included diplomatic service on Tanzania's Ministry of Foreign Affairs and International

Cooperation by British diplomatic officials.

24.     Despite the provision of the order authorizing Tanzania to apply to vary or discharge the High Court's judgment, Tanzania never did so.  Accordingly, on July 20, 2017, the High Court issued a further order stating that the "[t]ime for any liberty to apply to vary or discharge [the order] has now expired and [the order] is now a final judgment."  The court granted Stirling permission to commence any enforcement proceedings with immediate effect.

### *Netherlands Enforcement Proceedings*

25.     On June 13, 2016, Stirling applied to the Hague Court of Appeals, Civil Law Division, in the Netherlands for recognition and enforcement of the awards.

26.     On December 20, 2016, the Court of Appeals issued an order granting that application.  The court found that Stirling had adequately served Tanzania with notice of the application and had informed Tanzania that, if it wished to mount a defense, it needed to retain Netherlands counsel.  Despite that service, Tanzania failed to appear at the hearing.

27.     The Court of Appeals found that Stirling had furnished certified copies of the arbitral awards that complied with the relevant provisions of the European Development Fund rules.  The court further found that there were no apparent grounds for refusing to recognize or enforce the awards.

28.     Accordingly, the court entered a judgment providing that the Second Corrected Partial Award and Final Award were both recognized in the Netherlands and granting Stirling leave to enforce both awards.

### *This Enforcement Action*

29.     Tanzania has not paid any of the amounts it owes under either the English Judgment or the Dutch Judgment.

30.     Stirling believes that Tanzania currently has or in the future may have assets within this jurisdiction that may be subject to attachment and execution to satisfy its debts.

31.     Accordingly, Stirling brings this action for enforcement and recognition of the English Judgment and the Dutch Judgment.

## COUNT ONE

### RECOGNITION AND ENFORCEMENT OF ENGLISH JUDGMENT

32.     Stirling re-alleges the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein.

33.     The English Judgment is a foreign money judgment entitled to recognition and enforcement under the Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371.   Foreign judgments enforcing arbitral awards qualify for recognition under that Act.   *See, e.g.*, *Commissions Imp. Exp. S.A. v. Republic of Congo*, 757 F.3d 321 (D.C. Cir. 2014), *on remand*, 118 F.3d 220 (D.D.C. 2015).

34.     The English Judgment grants recovery of sums of money, namely £505,537.66, $329,984.78, €24,236,919.65, and Tshs 14,373,695,574.87, plus costs and interest.

35.     The English Judgment is final, conclusive, and enforceable against Tanzania under the laws of the United Kingdom.

36.     The English Judgment does not relate to taxes, fines or other penalties, divorce, support or maintenance, domestic relations, or any other matter outside the scope of the Uniform Foreign-Country Money Judgments Recognition Act.

37.     No ground for refusing to recognize the English Judgment exists.   The English Judgment was rendered by a judicial system with impartial tribunals and procedures compatible

with the requirements of due process of law.   The English court had both subject-matter jurisdiction and personal jurisdiction over Tanzania.

38.     Further, Tanzania received notice of the English proceedings in sufficient time to apply to vary or discharge the order granting the judgment, but failed to do so.   The English Judgment was not procured by fraud.   Neither the judgment nor the underlying claim for enforcement is repugnant to the public policy of the District of Columbia or the United States. The English Judgment does not conflict with any other judgment, and the English proceedings were not contrary to any forum selection agreement between the parties.

39.     Finally, the English Judgment was not rendered in circumstances that raise any doubt about the integrity of the English court, and the proceedings before the English court were compatible with the requirements of due process of law.

40.     Accordingly, Stirling is entitled to recognition and enforcement of the English Judgment.

## COUNT TWO

## RECOGNITION AND ENFORCEMENT OF DUTCH JUDGMENT

41.     Stirling re-alleges the allegations set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.     The Dutch Judgment is a foreign money judgment entitled to recognition and enforcement under the Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371.

43.     The Dutch Judgment grants recovery of sums of money, namely, the amounts specified in the two underlying arbitral awards, plus interest.

44.     The Dutch Judgment is final, conclusive, and enforceable against Tanzania under the laws of the Netherlands.

45.     The Dutch Judgment does not relate to taxes, fines or other penalties, divorce, support or maintenance, domestic relations, or any other matter outside the scope of the Uniform Foreign-Country Money Judgments Recognition Act.

46.     No ground for refusing to recognize the Dutch Judgment exists.   The Dutch Judgment was rendered by a judicial system with impartial tribunals and procedures compatible with the requirements of due process of law.   The Dutch court had both subject-matter jurisdiction and personal jurisdiction over Tanzania.

47.     Further, Tanzania received notice of the Dutch proceedings in sufficient time to appear, but failed to do so.   The Dutch Judgment was not procured by fraud.   Neither the judgment nor the underlying claim for enforcement is repugnant to the public policy of the District of Columbia or the United States.   The Dutch Judgment does not conflict with any other judgment, and the Dutch proceedings were not contrary to any forum selection agreement between the parties.

48.     Finally, the Dutch Judgment was not rendered in circumstances that raise any doubt about the integrity of the Dutch court, and the proceedings before the Dutch court were compatible with the requirements of due process of law.

49.     Accordingly, Stirling is entitled to recognition and enforcement of the Dutch Judgment.

## PRAYER FOR RELIEF

WHEREFORE, judgment should be entered in favor of Stirling and against Tanzania granting the following relief:

a.  recognition and enforcement the English Judgment and the Dutch Judgment;

b.  a money judgment in an amount no less than £505,537.66, $329,984.78, €24,236,919.65, and Tshs 14,373,695,574.87, plus costs and interest, for a total amount exceeding $41.4 million;

c.  prejudgment and post-judgment interest;

d.  any attorney's fees, litigation expenses, or costs that may be recoverable in this proceeding; and

e.  such other and further relief as may be just and proper.

Dated:   October 12, 2017
         Washington, D.C.

Respectfully submitted,

Robert K. Kry
D.C. Bar # 490545
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorney for Plaintiff*