# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STIRLING CIVIL ENGINEERING
LIMITED,

                Plaintiff,

    v.

GOVERNMENT OF THE UNITED
REPUBLIC OF TANZANIA,

             Defendant.

No. 1:17-cv-02116-RC

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS

Robert K. Kry (D.C. Bar #490545)
James A. Barta (D.C. Bar #1032613)
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 4

I.    The Implied Waiver Exception Applies ........................................................... 5

      A.    Tanzania's Argument Is Directly Contrary to *Seetransport* ..................... 5

      B.    Tanzania's Attempts To Distinguish *Seetransport* Are Meritless ............ 7

      C.    Tanzania Offers No Good Reason To Refuse To Follow *Seetransport* ........ 10

            1.    *Seetransport* Was Correctly Decided ......................................... 10

            2.    *Commissions Import Export* Confirms That the D.C. Circuit Would Follow *Seetransport* ................................................... 13

            3.    Congress Did Not Implicitly Repeal the Implied Waiver Exception ........ 15

II.    The Arbitration Exception Applies .................................................................. 18

CONCLUSION ......................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986) .......................................................... 8

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ............................ 2

*Birch Shipping Corp. v. Embassy of United Republic of Tanzania*, 507 F. Supp. 311
    (D.D.C. 1980) ................................................................................................................ 13

*Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72 (2d Cir. 2013) ............... 17

*Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002) .................................................. 17

*Comm'ns Imp. Exp. S.A. v. Republic of Congo*, 757 F.3d 321 (D.C. Cir. 2014) ................... *passim*

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 603 F. App'x 1
    (D.C. Cir. 2015) ............................................................................................................ 19

*Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46
    (D.D.C. 2010) ................................................................................................................ 19

*Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999) ................. 11, 16, 17, 18

*Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) ................................................................ 17

*Ipitrade Int'l, S. A. v. Fed. Republic of Nigeria*, 465 F. Supp. 824 (D.D.C. 1978) ...................... 11

*Karaha Bodas Co. v. Perusahann Pertambangan Minyak Dan Gas Bumi Negra*,
    313 F.3d 70 (2d Cir. 2002) ........................................................................................... 13

*M.B.L. Int'l Contractors, Inc. v. Republic of Trinidad & Tobago*, 725 F. Supp. 52
    (D.D.C. 1989) ................................................................................................................ 11

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013) ........................................................ 17

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) .............. 16

*Randall v. Loftsgaarden*, 478 U.S. 647 (1986) .............................................................. 16

*Ritchie v. McMullen*, 159 U.S. 235 (1895) ....................................................................... 8

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft
    v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) ......................................... *passim*

*Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179 (D.D.C. 2016) .................... 11, 17

*Tahan v. Hodgson*, 662 F.2d 862 (D.C. Cir. 1981) .......................................................... 9

*TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007)........................................8

*United States v. Georgia*, 546 U.S. 151 (2006) ........................................................................19

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154 (D.C. Cir. 2002) .............15

## CONSTITUTIONAL PROVISIONS, TREATIES, AND STATUTES

U.S. Const. amend. XIV ...........................................................................................19

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
     June 10, 1958, 21 U.S.T. 2517................................................................ *passim*

9 U.S.C. § 207 .................................................................................................1, 14

28 U.S.C. § 1605(a).......................................................................................15, 16

28 U.S.C. § 1605(a)(1) ................................................................................ *passim*

28 U.S.C. § 1605(a)(5) ........................................................................................17

28 U.S.C. § 1605(a)(6) ................................................................................ *passim*

28 U.S.C. § 1605A ...............................................................................................17

28 U.S.C. § 1610(a)(1) ..................................................................................16, 18

28 U.S.C. § 1963 ..................................................................................................13

D.C. Code § 15-364(c)(1)......................................................................................9

D.C. Code § 15-364(c)(8)......................................................................................9

D.C. Code § 15-369.............................................................................................1, 9

Reciprocal Enforcement of Foreign Judgements Act, Ord. No. 12 of 1935
     (July 5, 1935) (Tanzania)..............................................................................12

## LEGISLATIVE MATERIALS

H.R. Rep. No. 94-1487 (1976)....................................................................4, 6, 11

S. Rep. No. 94-1310 (1976)...................................................................................11

*Foreign Sovereign Immunities Act: Hearing Before the Subcomm. on
     Administrative Law and Governmental Relations of the H. Comm.
     on the Judiciary,* 100th Cong. (May 28, 1987)..........................................16, 18, 20

**OTHER AUTHORITIES**

*New York Arbitration Convention: Contracting States*, http://www.newyork
    convention.org/countries.................................................................................3, 7, 12

*Restatement (Second) of Contracts* ch. 16, topic 2 (1981) ...........................................19

Plaintiff Stirling Civil Engineering Limited ("Stirling") respectfully submits this memorandum of law in opposition to the United Government of Tanzania's ("Tanzania's") motion to dismiss.

## INTRODUCTION

This case arises from more than $41 million in arbitral awards that Tanzania is refusing to pay. Over seven years ago, a duly appointed arbitral tribunal found Tanzania liable to Stirling for breaches of a public works contract and awarded damages. Tanzania has never denied its liability, but has stalled for time by failing to appropriate the funds to pay. Finally, Stirling had no choice but to try to collect involuntarily, and it began enforcement efforts abroad. It first obtained judgments in the United Kingdom and the Netherlands enforcing the awards. It then sought to collect in the United States.

The Federal Arbitration Act imposes a short, three-year deadline on actions to enforce awards – a time period that had passed while Tanzania was dragging its feet. 9 U.S.C. § 207. Accordingly, instead of seeking to enforce the awards directly, Stirling pursued its efforts indirectly by seeking recognition of the English and Dutch judgments based on the award, invoking the much longer 15-year limitations period of the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act. D.C. Code § 15-369. That strategy – enforcing an award against a sovereign after three years by seeking recognition of a foreign judgment based on the award – was specifically blessed by the Second Circuit in *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993), and by the D.C. Circuit in *Commissions Import Export S.A. v. Republic of Congo*, 757 F.3d 321 (D.C. Cir. 2014).

Tanzania's sovereign immunity argument is an end run around those settled decisions. Even though *Seetransport* and *Commissions Import Export* allow Stirling to enforce its award

indirectly in this manner, Tanzania claims that those cases provide a hollow remedy because its *waiver of immunity* does not extend so far.  That argument is baseless.  As Tanzania admits, *Seetransport* directly addressed this precise issue and rejected its position, holding that a sovereign's implied waiver of immunity in an arbitration agreement extends to closely related recognition proceedings like these.  Tanzania's efforts to distinguish *Seetransport* rely on factual details that played no role in the case.  And Tanzania shows no reason to depart from *Seetransport*'s holding.  To the contrary, given that the D.C. Circuit has already embraced the bulk of *Seetransport*'s analysis in *Commissions Import Export*, there is no reason to believe it would reject the case's implied waiver analysis.

Finally, wholly apart from the implied waiver exception, this Court independently has jurisdiction under the FSIA's arbitration exception.  Although the applicability of that exception remains an open issue in this Circuit, the better reading of the provision is that it encompasses indirect enforcement actions like this one.

For both reasons, Tanzania's motion to dismiss should be denied.

### BACKGROUND

This case arises from a contract dispute resolved by arbitration.  In 1999, Tanzania contracted with Stirling's predecessor in interest, Impresa Ing. Fortunato Federici SpA ("IFF"), to rehabilitate a 43-kilometer stretch of road between Dar es Salaam and Bagamoyo, Tanzania.  Compl. ¶12; Kry Decl. Ex. A (contract).[1]  During the course of the project, Tanzania caused various delays and increased IFF's costs.  Compl. ¶14.  Tanzania failed to disclose unlawful pipe connections and graveyards along the road's proposed path.  *Id.*  Tanzania changed the design

---

[1] Although the contract was not appended to the Complaint, this Court may consider the document in connection with this motion because it is "referred to in the complaint and . . . integral to [the plaintiff's] claims."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).  The same is true for the arbitral awards.  Kry Decl. Exs. B, C.

specifications for bridges and then delayed approving the revised designs.  *Id.*   And Tanzania directed the use of an improper gravel sub-base that led to problems requiring remediation.  *Id.*

The project was funded in part by the European Development Fund.  Compl. ¶ 13.  As a result, the contract incorporated EDF arbitration rules.  *Id.*  Tanzania agreed to resolve disputes "by arbitration in accordance with the procedural rules adopted in accordance with the [relevant] Convention."  Kry Decl. Ex. A, § I (General Conditions), art. 68.5(b)(ii).  Tanzania agreed to "carry out [any] award without delay" and to "recognise as binding every award . . . and [to] ensure that it is enforced in its territory."  Kry Decl. Ex. A, § K (Procedural Rules), art. 33.3.  Tanzania also agreed to enforcement in other countries:  "The enforcement of the award shall be regulated by the law relating to the enforcement of judgments which is in force in the State in whose territory the enforcement is to be carried out."  *Id.* art. 34.3.  Finally, Tanzania has ratified the New York Convention, a multilateral treaty that provides for the enforcement of arbitral awards in other countries "in accordance with the rules of procedure of the territory where the award is relied upon."  Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. III, June 10, 1958, 21 U.S.T. 2517, 2519 (Kry Decl. Ex. D); *New York Arbitration Convention: Contracting States*, http://www.newyorkconvention.org/countries (noting accession on October 13, 1964).

Stirling submitted this dispute to arbitration in 2004.  Compl. ¶ 15.  In December 2009, a tribunal in Tanzania issued a Second Corrected Partial Award finding that Tanzania had breached the contract and awarding various damages.  *Id.* ¶ 16; Kry Decl. Ex. B.  Six months later, the tribunal issued a Final Award on costs and interest.  Compl. ¶ 17; Kry Decl. Ex. C.

Over the ensuing years, Stirling and Tanzania engaged in extensive discussions over Tanzania's duty to pay the awards.  Compl. ¶ 18.  Tanzania never denied its liability.  *Id.*  But it dragged its feet and repeatedly failed to appropriate the necessary funds.  *Id.*

Accordingly, Stirling had no choice but to commence enforcement.  In November 2015, Stirling obtained a judgment enforcing the awards from the United Kingdom's High Court of Justice.  Compl. ¶21 & Ex. A.  That judgment became final in July 2017.  Compl. ¶24 & Ex. B.  In December 2016, Stirling obtained an order from the Hague Court of Appeals in the Netherlands that likewise granted leave to enforce the awards.  Compl. ¶26 & Ex. C at 4.  The total amount due with interest now exceeds $41 million.  Compl. ¶21.

Stirling then sought to enforce its award in the United States.  Given the lengthy history of negotiations described above, by the time Stirling commenced this action, three years had already elapsed.  Accordingly, relying on the Second Circuit's decision in *Seetransport* and the D.C. Circuit's decision in *Commissions Import Export*, Stirling filed this indirect enforcement action, seeking recognition of the judgments it had previously obtained in the United Kingdom and the Netherlands.

## ARGUMENT

Tanzania does not dispute that *Seetransport* and *Commissions Import Export* permit a creditor to enforce an award indirectly, outside the three-year limitations period, by seeking recognition of a foreign judgment based on the award.  Tanzania nonetheless seeks to vitiate that rule by claiming that its ***waiver of immunity*** does not apply to proceedings like this.  That argument fails.  It is directly contrary to the Second Circuit's decision in *Seetransport*.  And there is no reason why this Court should depart from that ruling – particularly since the D.C. Circuit has already embraced most of *Seetransport*'s analysis in *Commissions Import Export*.

The Foreign Sovereign Immunities Act expressly grants jurisdiction where a "foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  One of the specific examples of an "implicit waiver[ ]" the legislative history identifies is "where a foreign state has agreed to arbitration."  H.R. Rep. No. 94-1487, at 18 (1976).  That waiver is

even more clear in a case like this, where the state has both ratified the New York Convention and contractually agreed to enforcement in foreign jurisdictions.

This Court also independently has jurisdiction under the FSIA's arbitration exception. That exception applies where "the action is brought, either to enforce an agreement . . . to submit to arbitration" or "to confirm an award made pursuant to such an agreement." 28 U.S.C. § 1605(a)(6). This case fits comfortably within both prongs of that provision, as well as its broader purpose. For that reason too, Tanzania's motion to dismiss should be denied.

## I.    THE IMPLIED WAIVER EXCEPTION APPLIES

The FSIA's implied waiver exception applies where a "foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). In *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993), the Second Circuit applied that provision to a case indistinguishable from this one in all material respects and rejected the precise argument Tanzania makes here. Tanzania's efforts to distinguish *Seetransport* are meritless, and Tanzania offers no persuasive reason why this Court should depart from that well-reasoned decision.

### A.    Tanzania's Argument Is Directly Contrary to *Seetransport*

In *Seetransport*, the plaintiff obtained an arbitral award from the International Chamber of Commerce against a trading company owned by the Romanian government. 989 F.2d at 574-75. It also obtained a judgment from the Court of Appeals of Paris upholding the award. *Id.* at 574. The plaintiff sought to enforce both the award and the judgment in the United States several months after the three-year period for enforcing the award had expired. *Id.*

The Second Circuit rejected the claim for enforcement of the award itself as untimely. 989 F.2d at 581. But that time bar was no impediment to recognition of the judgment based on the award: "Although the claim for enforcement of the arbitral award has been dismissed as

time-barred, we nonetheless conclude that subject matter jurisdiction exists . . . with respect to the alternative cause of action seeking enforcement of the decision of the Court of Appeals of Paris." *Id.* at 582. The court remanded for further proceedings on that claim. *Id.* at 583.

In reaching those holdings, the Second Circuit rejected the defendant's sovereign immunity argument. With respect to the claim to enforce the award, the court noted that "Section 1605(a)(1) provides that a foreign state shall not be immune . . . in any case 'in which the foreign state has waived its immunity either explicitly or by implication.' " 989 F.2d at 577. The legislative history cited an " 'agree[ment] to arbitrat[e]' " as a specific example. *Id.* (quoting H.R. Rep. No. 94-1487, at 18 (1976)). Romania had ratified the New York Convention and was thus well aware that an award could result in enforcement abroad: "[W]hen a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory State must have contemplated enforcement actions in other signatory States." *Id.* at 578.

The Second Circuit reached the same result with respect to the claim for recognition of the Paris judgment. The court recognized that, "unlike the recognition of arbitral awards, which is governed by federal law, the recognition of foreign judgments is governed by state law." 989 F.2d at 582. Nonetheless, the court held that "the cause of action to enforce the foreign judgment is within the scope of [the defendant's] implicit waiver of sovereign immunity." *Id.* at 582-83. That was so "because the cause of action is so closely related to the claim for enforcement of the arbitral award." *Id.* at 583.

That same analysis applies here. Just like the plaintiff in *Seetransport*, Stirling seeks to collect on an unpaid arbitral award by obtaining recognition of foreign judgments based on that award. Just like the defendant in *Seetransport*, Tanzania agreed to resolve any disputes by arbitration. Kry Decl. Ex. A, § I, art. 68.5(b)(ii). Just like the defendant in *Seetransport*, Tanzania ratified the New York Convention and thus clearly anticipated enforcement in other

6

countries.  *See New York Arbitration Convention: Contracting States*, http://www.newyork convention.org/countries.  Indeed, this case presents even stronger facts than *Seetransport* because Tanzania **contractually agreed** to enforcement abroad:  "The enforcement of the award shall be regulated by the law relating to the enforcement of judgments which is in force in the State in whose territory the enforcement is to be carried out."  Kry Decl. Ex. A, § K, art. 34.3.  Thus, just as in *Seetransport*, "the cause of action to enforce the foreign judgment is within the scope of [the defendant's] implicit waiver of sovereign immunity" because "the cause of action is so closely related to the claim for enforcement of the arbitral award."  989 F.2d at 582-83.

### B.    Tanzania's Attempts To Distinguish *Seetransport* Are Meritless

Tanzania tries to distinguish *Seetransport* on various grounds.  But none has any merit.

***First***, Tanzania argues that the plaintiff in *Seetransport* was seeking to enforce a judgment from the same country where the award was rendered, whereas here Stirling is seeking to enforce judgments issued by third countries.  Tanzania Mem. 12-13.  According to Tanzania, that difference matters because courts in the rendering state can exercise more "fulsome review of the award." *Id.* at 13.  That argument defies *Seetransport*'s reasoning.  *Seetransport* held that the defendant had implicitly waived its immunity because, by ratifying the New York Convention, it must have contemplated enforcement actions in other countries, and actions to recognize judgments based on an award are "closely related" to actions to enforce the award itself.  989 F.2d at 577-78, 582-83.  Nothing in that holding turned in any way on whether the state that issued the judgment was the same state that rendered the award.

Indeed, Tanzania's argument gets it precisely backward.  The New York Convention prescribes detailed standards for the enforcement of awards in states other than the one where the award was rendered.  *See* New York Convention art. I(1), 21 U.S.T. at 2519 (applying to "the recognition and enforcement of arbitral awards made in the territory of a State ***other than*** the

State where the recognition and enforcement of such awards are sought" (emphasis added)).  By contrast, the Convention is completely silent on the enforcement of awards in the rendering state. *See TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 939 (D.C. Cir. 2007) (Convention "provides no restraint whatsoever on the control functions of local courts at the seat of arbitration").  Thus, while a state's accession to the New York Convention is a strong indicator that the state anticipates enforcement in ***other*** countries, it says nothing whatsoever about the significance of local confirmation proceedings.  *Seetransport* found an implied waiver based on the defendant's ratification of the New York Convention.  989 F.2d at 577-78.  By that standard, Tanzania's implied waiver is even more clear here:  Stirling seeks recognition of judgments entered in foreign enforcement proceedings specifically contemplated by the New York Convention, whereas the plaintiff in *Seetransport* was seeking recognition of a judgment entered in local French review proceedings that had nothing to do with the Convention at all.

***Second***, Tanzania asserts that the sovereign in *Seetransport* "vigorously challenged the validity of the arbitral award," whereas here the judgments "were entered by default" and Tanzania allegedly "lacked the ability to fully contest the validity of the Arbitral Awards." Tanzania Mem. 13.  That is no distinction either.  Nothing in *Seetransport* turned on whether the judgment was entered by default or the scope of the proceedings.  Rather, as already explained, *Seetransport* found an implied waiver because, by ratifying the New York Convention, the state must have contemplated enforcement in other countries, and actions to recognize judgments based on an award are "closely related" to those underlying actions.  989 F.2d at 577-78, 582-83. That analysis has nothing to do with the procedures that produced the foreign judgments.

Nor would it make any sense for immunity to turn on those issues.  "[A] foreign default judgment is not more or less conclusive . . . [than] a contested judgment."  *Ackermann v. Levine*, 788 F.2d 830, 842 (2d Cir. 1986); *see, e.g.*, *Ritchie v. McMullen*, 159 U.S. 235, 240-43 (1895)

(recognizing default foreign judgment); *Tahan v. Hodgson*, 662 F.2d 862, 866 (D.C. Cir. 1981) (same). Tanzania was duly notified of both the English and the Dutch proceedings. Compl. ¶¶ 23, 26. Indeed, Tanzania was given *a year and a half* to appear in the English proceedings – it simply chose not to do so. *Id.* ¶¶ 23-24.

Nor has Tanzania shown that restrictions in the English or Dutch proceedings prejudiced its defense in any way. Tanzania points out that the New York Convention limited the English and Dutch courts' ability to refuse to enforce awards while imposing no similar limits on Tanzanian courts. Tanzanian Mem. 13 & n.6. But the fact that the Convention would not prescribe the standard for review of an award in Tanzania does not mean that Tanzania actually has some valid defense to liability on the award that would have been recognized in Tanzania but not the United Kingdom or the Netherlands. The Complaint alleges – and this Court must accept for purposes of the motion to dismiss – that Tanzania has never disputed its liability on the award. Compl. ¶ 18. Hypothetical differences between standards of review in various jurisdiction are beside the point where a defendant has no valid defense in *any* jurisdiction.

If Tanzania actually lacked notice of the foreign enforcement proceedings or was denied a fair opportunity to defend itself, it can raise those arguments as defenses to recognition. D.C. Code § 15-364(c)(1), (8). Those issues have nothing to do with whether Tanzania's implied waiver of immunity extends to this proceeding.

*Third*, Tanzania urges that *Seetransport* was commenced "just four months beyond the limitations period" whereas here a longer time elapsed. Tanzania Mem. 14. But that too has no bearing on the Second Circuit's analysis. Whether Stirling's action was filed four months or four years after the FAA limitations period, the relevant fact is that it was filed well within the *fifteen-year* limitations period of the Recognition Act. D.C. Code § 15-369. Moreover, the passage of time in this case is no fault of Stirling's. The parties were engaged for years in

discussions over Tanzania's duty to pay.  Compl. ¶18.  Tanzania has never denied its liability, but has strung Stirling along, repeatedly failing to appropriate the necessary funds.  *Id.*

Tanzania speculates that the Second Circuit was "plainly uncomfortable finding the action time-barred" in *Seetransport* and crafted a rule good for that case only.  Tanzania Mem. 14.  But there is no reason to attribute such lawlessness to the court.  The Second Circuit found an implied waiver because (1) the defendant had agreed to arbitrate; (2) the defendant had ratified the New York Convention; and (3) the plaintiff's action to recognize a foreign judgment based on the award was "closely related" to an action to enforce the award itself.  989 F.2d at 577-78, 582-83.  All those facts are present here, and the Court should reach the same result.

**C.**     **Tanzania Offers No Good Reason To Refuse To Follow *Seetransport***

Having failed to distinguish *Seetransport*, Tanzania argues that the case was wrongly decided.  But that case rests on solid ground – and indeed the D.C. Circuit has already largely embraced the Second Circuit's analysis.

**1.**     ***Seetransport* Was Correctly Decided**

*Seetransport* rests on solid foundations.  A commercial counterparty that insists on an arbitration clause with a foreign sovereign does not do so for the sheer thrill of arbitrating a dispute.  Rather, the party reasonably expects that the arbitration will yield an award it can judicially enforce through ordinary enforcement mechanisms in the event the sovereign refuses to pay.  An agreement to arbitrate without the means to enforce the award would be a hollow remedy.  Arbitration agreements thus fall squarely within the category of actions that give rise to an implied waiver of immunity.  That is all the more true in a case like this, where the sovereign has ratified an international convention confirming the potential for foreign enforcement.

It is thus no surprise that the FSIA's legislative history specifically lists as an example of an "implicit waiver[ ]" a situation "where a foreign state has agreed to arbitration in another

country."  H.R. Rep. No. 94-1487, at 18 (1976); S. Rep. No. 94-1310, at 18 (1976).  Court after

court has agreed with *Seetransport*'s holding that an agreement to arbitrate gives rise to an

implied waiver of immunity for enforcement proceedings – at least where, as here, the sovereign

has ratified an international treaty confirming the potential for such proceedings.  *See, e.g.*,

*Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999) ("In *Seetransport*

the Second Circuit reasoned, correctly we think, that 'when a country becomes a signatory to the

[New York] Convention, by the very provisions of the Convention, the signatory state must have

contemplated enforcement actions in other signatory states.'"); *Stati v. Republic of Kazakhstan*,

199 F. Supp. 3d 179, 189 (D.D.C. 2016) ("[B]ecause respondent agreed to arbitrate in Sweden,

the implied waiver doctrine applies, and Kazakhstan cannot assert its foreign sovereign

immunity . . . ."); *M.B.L. Int'l Contractors, Inc. v. Republic of Trinidad & Tobago*, 725 F. Supp.

52, 55-56 (D.D.C. 1989) (similar); *Ipitrade Int'l, S. A. v. Fed. Republic of Nigeria*, 465 F. Supp.

824, 826 (D.D.C. 1978) (similar).

    *Seetransport* also correctly found that principle broad enough to encompass an action to

recognize a foreign judgment enforcing the award.  As the Second Circuit observed, "[a] cause

of action to enforce [a] foreign judgment [enforcing an award] . . . is within the scope of the

waiver because the cause of action is so closely related to the claim for enforcement of the

arbitral award" itself.  989 F.2d at 582-83.  Indeed, it is hard to see much daylight between the

two.  The only reason to seek recognition of a foreign judgment enforcing an award is to collect

on the underlying award itself.  Without the award, there would be no judgment.  Recognition

actions like this are a natural extension of the underlying enforcement action.

    While courts interpreting the implied waiver exception insist on some showing that the

foreign sovereign contemplated enforcement in foreign jurisdictions, they have never insisted

that the sovereign foresee the precise procedures that ensue.  Arbitral awards may be enforced

through a wide variety of mechanisms. The New York Convention itself provides for enforcement "in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention art. III, 21 U.S.T. at 2519. And the EDF Rules to which Tanzania agreed likewise provide that "[t]he enforcement of the award shall be regulated by the law relating to the enforcement of judgments which is in force in the State in whose territory the enforcement is to be carried out." Kry Decl. Ex. A, § K, art. 34.3.[2]

By agreeing to arbitrate and agreeing to foreign enforcement regimes whatever shape they might take, Tanzania plainly appreciated that it might be subject to recognition actions like this one. The United Kingdom, the Netherlands, and the United States are all parties to the New York Convention, just like Tanzania. *See New York Arbitration Convention: Contracting States*, http://www.newyorkconvention.org/countries. Tanzania thus clearly anticipated enforcement proceedings in all those jurisdictions. And it could hardly come as a surprise that those same countries would recognize each other's judgments entered in those proceedings. Countless nations have foreign judgment recognition statutes – even Tanzania itself. *See* Reciprocal Enforcement of Foreign Judgements Act, Ord. No. 12 of 1935 (July 5, 1935) (Tanzania) (Kry Decl. Ex. E).

Excluding recognition actions like this one from the implied waiver exception would produce unreasonable results. For example, it is routine practice in arbitration enforcement cases

---

[2] Tanzania asserts that it "could not have anticipated enforcement actions in the United States by agreeing to arbitration under the European Development Fund Rules" because Article 34.1 of the EDF Rules applies only to enforcement in a "signatory State of the [ACP/EEC] Convention." Tanzania Mem. 11 n.5. But Article 34.3 contains no similar limitation. It states more broadly that "enforcement of the award shall be regulated by the law relating to the enforcement of judgments which is in force in the State in whose territory the enforcement is to be carried out." Kry Decl. Ex. A, § K, art. 34.3. At a minimum, that article confirms that Tanzania contemplated enforcement in numerous countries under a wide variety of enforcement regimes, making this an even stronger case than *Seetransport*.

to obtain a judgment enforcing an award in one U.S. state and then register that judgment pursuant to 28 U.S.C. § 1963 in other U.S. states where assets might be found. *See, e.g.*, *Karaha Bodas Co. v. Perusahann Pertambangan Minyak Dan Gas Bumi Negra*, 313 F.3d 70, 77-78 (2d Cir. 2002) (Texas enforcement judgment registered in New York); *Birch Shipping Corp. v. Embassy of United Republic of Tanzania*, 507 F. Supp. 311, 311-12 (D.D.C. 1980) (New York enforcement judgment registered in D.C.). Tanzania's position would thwart that approach because the sovereign could claim that its implied waiver of immunity extended only to the initial action to enforce the award and not the subsequent registrations. Creditors would have to commence brand new enforcement actions under the Convention in every U.S. state where assets might be found. That would be a radical and complicated departure from current practice.

## 2.  *Commissions Import Export* Confirms That the D.C. Circuit Would Follow *Seetransport*

Tanzania's position is also hard to square with the D.C. Circuit's decision in *Commissions Import Export S.A. v. Republic of Congo*, 757 F.3d 321 (D.C. Cir. 2014). In that case, the Court considered the same factual scenario as *Seetransport*. The plaintiff obtained an award against the Republic of Congo from an arbitration in France arising out of unpaid promissory notes. *Id.* at 325. Nine years later, the plaintiff obtained a judgment from an English court enforcing the award. *Id.* Two years after that, the plaintiff sought recognition of the English judgment in New York. *Id.* The district court dismissed the case under the FAA's three-year statute of limitations. *Id.* But the D.C. Circuit reversed, holding that "the limitations period in [the] FAA . . . does not preempt the longer limitations period in the D.C. Recognition Act for enforcing a foreign court judgment." *Id.* at 333.

In reaching that conclusion, the D.C. Circuit relied heavily on Second Circuit case law, particularly *Seetransport*. The Court noted that its holding "accords with the longstanding

position of the Second Circuit Court of Appeals, the only other federal appeals court to have addressed the relationship between 9 U.S.C. § 207 and state judgment recognition laws."  757 F.3d at 332.  As the D.C. Circuit observed, "the relevant facts here are virtually identical to those in *Seetransport*, [and] the reasoning of the Second Circuit is instructive."  *Id.* at 333.

The sovereign immunity issue in *Commissions Import Export* differed slightly from the one in *Seetransport* because there was an express waiver of immunity:  The defendant had agreed in the applicable commitment letters that "[a]ll disputes arising from the present contract shall be definitively settled in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce" and that the defendant "waive[d] the right to invoke any immunity from legal proceedings . . . in the context of the settlement of a dispute relating to the undertakings which are the subject hereof."  No. 12 Civ. 00743, Dkt. 37-21 at 7-8 (D.D.C. filed July 30, 2012).  Relying on that language, the D.C. Circuit held that it "ha[d] jurisdiction in view of the Congo's waiver of any claim of sovereign immunity in the commitment letters that accompanied the promissory notes."  757 F.3d at 325 (citing 28 U.S.C. § 1605(a)(1)).

Despite that difference, the D.C. Circuit's reasoning strongly suggests that the Court would reach the same result with an implied waiver.  The express waiver in *Commissions Import Export* said nothing about recognizing foreign judgments.  It referred generically to "the settlement of a dispute relating to the undertakings."  No. 12 Civ. 00743, Dkt. 37-21 at 7.  The D.C. Circuit's holding that this vague language covered recognition of a judgment based on an award shows that judgment recognition actions like this one are part and parcel of ordinary enforcement efforts.  Put another way, if the D.C. Circuit was willing to find an express waiver from the vague and generic language in *Commissions Import Export*, it would also likely find an implied waiver from the language at issue here and in *Seetransport*.

14

Tanzania points out that implied waivers are construed narrowly.  Tanzania Mem. 6.  But the same is true of express waivers:  "[E]xplicit waivers of sovereign immunity are narrowly construed."  *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002).  The express waiver in *Commissions Import Export* thus does nothing to distinguish the case.  The fact remains that, as in *Seetransport*, the defendant agreed, whether expressly or implicitly, to arbitral enforcement proceedings, and recognition actions for judgments based on arbitral awards are simply one variety of those proceedings.

Refusing to extend *Commissions Import Export* to implied waiver cases would substantially undermine the practical effect of that decision.  The D.C. Circuit would not have written a lengthy opinion endorsing the recognition of judgments based on arbitral awards despite the FAA's time bar if it did not also mean to import *Seetransport*'s immunity rationale.  The ability to overcome the time bar does no good if the waiver of immunity does not apply.  Having endorsed the larger part of *Seetransport*'s analysis, the D.C. Circuit would surely embrace its immunity analysis as well.

Tanzania contends that "this aspect of the *Seetransport* decision has never been followed, even by other courts in the Second Circuit."  Tanzania Mem. 14.  But Tanzania does not identify any court that has **refused** to follow *Seetransport*'s immunity rationale either.   The Second Circuit's analysis was well reasoned and compels the denial of Tanzania's motion.

### 3.   Congress Did Not Implicitly Repeal the Implied Waiver Exception

Finally, Tanzania urges this Court to reject *Seetransport* because Congress supposedly rendered § 1605(a)(1) inapplicable to arbitration disputes when it enacted § 1605(a)(6)'s arbitration exception in 1988.  Tanzania Mem. 7-10.  That argument fails for numerous reasons.

First, Tanzania ignores the statutory text.  The exceptions to immunity in § 1605(a) are disjunctive – each one is an ***independent*** exception, and the failure to qualify for one exception

15

has no bearing on the applicability of any other.  *See* 28 U.S.C. § 1605(a) (listing exceptions separated by the word "or").

Second, the legislative history is devastating to Tanzania's position.  In the very same hearing testimony Tanzania invokes, the ABA spokesperson for § 1605(a)(6) explained that the new provision would ***not*** supplant § 1605(a)(1)'s implied waiver exception:  "***[T]his amendment does not replace Sections 1605(a)(1) and 1610(a)(1) of the Act.  A court may still hold that a particular agreement to arbitrate constitutes a waiver of immunity and consent to the jurisdiction of the court***."  *Foreign Sovereign Immunities Act: Hearing Before the Subcomm. on Administrative Law and Governmental Relations of the H. Comm. on the Judiciary* ("*1987 House Hearing*"), 100th Cong. 92 (May 28, 1987) (statement of Mark B. Feldman) (emphasis added).  As examples of implicit waivers, the representative pointed to "[a] model arbitration clause . . . [that] stipulates that 'judgment upon the award rendered may be entered in any Court having jurisdiction thereof'" as well as language in "[m]any international contracts provid[ing] that 'the award may be enforced by any court of competent jurisdiction.'"  *Id.*  "Language of this type," he explained, "***will support a waiver of immunity***."  *Id.* (emphasis added).  Tanzania agreed to precisely such language here.  Kry Decl. Ex. A, § K, art. 34.3.

Third, Tanzania's construction flouts the canon against implied repeals.  Tanzania argues that, by adding a ***new*** exception to immunity in 1988, Congress implicitly ***narrowed*** the scope of an existing one.  But "repeals by implication are not favored."  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007).  And that canon applies to "partial repeal[s]" too.  *Randall v. Loftsgaarden*, 478 U.S. 647, 661 (1986).

It is thus no surprise that cases have consistently rejected Tanzania's view, continuing to apply the implied waiver exception despite the enactment of § 1605(a)(6).  Tanzania admits that the D.C. Circuit rejected its argument in *Creighton*, 181 F.3d at 121.  Tanzania Mem. 9.  Other

cases have too.  *See, e.g.*, *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 83-85 (2d Cir. 2013); *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016).

Tanzania claims that the "specific" arbitration exception trumps the more "general" implied waiver one.  Tanzania Mem. 8.  But neither provision is more "specific" than the other – each covers some cases the other does not.  The arbitration exception applies to many confirmation actions not subject to the implied waiver exception.  *See, e.g.*, *Creighton*, 181 F.3d at 122-24 (finding jurisdiction under § 1605(a)(6) but not (a)(1)).  Conversely, the implied waiver exception covers many cases that have nothing to do with arbitration.  The two provisions may overlap, but neither is more "specific" than the other.

The Second Circuit rejected a similar argument in *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011).  In that case, the plaintiff sued Afghanistan over the events of 9/11 under the FSIA's non-commercial tort exception, § 1605(a)(5).  *Id.* at 65.  The defendant argued that, because Congress later enacted an immunity exception specifically for terrorism claims in § 1605A, the plaintiff could not rely on that older, broader exception.  *Id.* at 67.  The Second Circuit disagreed, explaining that neither provision subsumed the other and that a plaintiff's inability to qualify for the later exception had no bearing on the scope of the earlier one.  *Id.* at 67-71.  The defendant's argument, the court noted, amounted to a claim of "implied repeal," which "runs against all canons of interpretation."  *Id.* at 69.

Tanzania also invokes the canon against superfluity.  Tanzania Mem. 8-9.  But *Seetransport*'s construction of the implied waiver exception does not cover all cases subject to the arbitration exception:  Some qualify only under the latter.  *See, e.g.*, *Creighton*, 181 F.3d at 122-24.  Regardless, a provision is not surplusage where it "ma[kes] a conclusion clear that might otherwise have been fought over in litigation."  *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 87 (2002); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (provision

"remove[d] doubt").  That is what § 1605(a)(6) did.   As the ABA official explained, "Congress expected arbitration awards to be executed . . . under Sections 1605(a)(1) and 1610(a)(1)." *1987 House Hearing* at 88.  But "some judges have been uncertain."  *Id.* at 89.  Congress enacted § 1605(a)(6) to address that "uncertainty."  *Id.* at 90-92.  Section 1605(a)(6) thus would not be superfluous even if it were wholly subsumed within §1605(a)(1).

Tanzania's argument thus fails at every turn.  *Seetransport* correctly interpreted the implied waiver exception as Congress originally enacted it, and nothing in the 1988 arbitration exception changed its scope in any way.

## II.    THE ARBITRATION EXCEPTION APPLIES

Wholly apart from the implied waiver exception, the FSIA's arbitration exception also applies.  That exception covers "action[s] . . . brought, either **[1]** to enforce an agreement made by the foreign state . . . to submit [a dispute] to arbitration . . . , or **[2]** to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6) (numbering added).  "[T]he New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'"  *Creighton*, 181 F.3d at 123-24.  And Stirling's award "is or may be governed" by that Convention.  *See* New York Convention art. I(1), 21 U.S.T. at 2519.

Tanzania urges that the exception does not apply here because it covers only "actions to confirm arbitral awards," and this case "seeks recognition of two foreign court judgments enforcing those awards."  Tanzania Mem. 4.  But the two cannot be so easily separated.  Stirling's action seeks to recognize foreign judgments precisely because those judgments confirmed its award.  A judgment in Stirling's favor here would effectively confirm the award in the United States by recognizing the foreign judgments of confirmation already obtained.  This

recognition action is a logical outgrowth of those underlying proceedings, and part of a broader effort to confirm and collect upon Stirling's arbitral award.

Moreover, while Tanzania focuses on the portion of § 1605(a)(6) that covers actions "to confirm an award," it ignores the first clause of the statute, which provides an independent basis for jurisdiction. That clause applies where an "action is brought . . . to enforce an agreement made by the foreign state . . . to submit [a dispute] to arbitration." 28 U.S.C. § 1605(a)(6). One way to "enforce" an agreement is to award damages for its breach. *See, e.g.*, *Restatement (Second) of Contracts* ch. 16, topic 2 (1981) (entire section devoted to "Enforcement by Award of Damages"); *cf. United States v. Georgia*, 546 U.S. 151, 158 (2006) (Congress's power to "enforce" Fourteenth Amendment includes authority to create private damages remedy). Tanzania promised in its arbitration agreement to "carry out [any] award without delay" and to "recognise as binding every award . . . and [to] ensure that it is enforced in its territory." Kry Decl. Ex. A, § K, art. 33.3. Stirling's recognition action seeks to "enforce" that agreement by requiring Tanzania to pay the money it owes pursuant to those promises. The action thus falls squarely within the language of the first clause of § 1605(a)(6).

While Tanzania dismisses the § 1605(a)(6) argument out of hand, courts in this Circuit have recognized it as an open issue. In *Continental Transfer Technique Ltd. v. Federal Government of Nigeria*, 697 F. Supp. 2d 46 (D.D.C. 2010), the plaintiff brought an action to recognize both an arbitral award and a foreign judgment enforcing that award. The court resolved both claims on the merits even though the only basis for jurisdiction it cited was the arbitration exception. *Id.* at 56. On appeal, the D.C. Circuit specifically left open whether § 1605(a)(6) applied to the recognition claim. *See Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 603 F. App'x 1, 3 n.2 (D.C. Cir. 2015) (stating that "we need not decide whether Section 1605(a)(6) . . . provides jurisdiction over [the] D.C. Recognition Act claim").

The fundamental purposes of the arbitration exception support applying the provision here.  In enacting the 1988 amendments, Congress recognized that "arbitration has become the preferred procedure for the peaceful resolution of disputes between private parties and foreign states."  *1987 House Hearing* at 91.  "American enterprises accept arbitration with foreign states . . . in expectation that the arbitration award will be enforceable in the United States . . . ."  *Id.*  "In practice, most sovereign parties respect their obligation to carry out arbitration awards rendered against them, but that tradition rests on expectations that awards are enforceable in court if they are not implemented voluntarily."  *Id.*

Excluding actions to recognize judgments based on arbitral awards from the arbitration exception would undermine that regime.  Where a sovereign refuses to pay an award, locating attachable assets around the globe can be a lengthy, iterative process that spans many years and extends well beyond the FAA's brief three-year limitations period.  In those cases, the ability to enforce an award in the United States by seeking recognition of a foreign judgment based on the award is a crucial complement to the underlying enforcement regime.  Tanzania's parsimonious construction of § 1605(a)(6) would eliminate that option in many cases and allow sovereign debtors to ignore their obligations with impunity.

## **CONCLUSION**

The Court should deny Tanzania's motion to dismiss.  If the Court grants any portion of the motion, Stirling respectfully requests leave to replead to cure the deficiency.

Dated:   December 11, 2017
        Washington, D.C.

Respectfully submitted,

  /s/ Robert K. Kry
Robert K. Kry (D.C. Bar #490545)
James A. Barta (D.C. Bar #1032613)
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on December 11, 2017, the foregoing document was filed and served on all parties by ECF.

_____/s/ Robert K. Kry_____
Robert K. Kry