**EXHIBIT C**

## IN THE MATTER OF THE EUROPEAN DEVELOPMENT FUND RULES

### AND IN THE MATTER OF AN ARBITRATION

#### BETWEEN

**Stirling Civil Engineering Limited**
*(Claimant by substitution for Impresa Ing. Fortunato Federici SpA[1])*

**Claimant**

**and**

#### Government of the United Republic of Tanzania

**Respondent**

---

# Final Award
# (Costs and Interest)
### (10th June 2010)

---

This document is the Final Award of an Arbitral Tribunal consisting of:

| *President:* | *Co-Arbitrator* | *Co-Arbitrator* |
|---|---|---|
| *Mr Anthony Bingham* | *Mr Louis Flannery* | *Mr Kesogukewele M.I.M Msita* |
| *3 Paper Buildings* | *Flat 69, Cliffords Inn* | *PO Box 70039* |
| *London EC4* | *London EC4A 1BX* | *Dar es Salaam* |
| *United Kingdom* | *United Kingdom* | *Tanzania* |

The Award concerns a dispute between the above-named parties.

**The Claimant is represented by:**

*Kesaria & Company,*
*Advocates*
*P.O.Box 729,*
*Dar es Salaam, Tanzania*

*Tel: +255 22 2113647/2113331*
*Fax: +255 22 2118460*

*dilip@kesarialaw.co.tz*

**The Respondent is represented by:**

*Mkono & Co.,*
*Advocates*
*P.O. Box 4369*
*Dar es Salaam, Tanzania*

*Tel: +255 22 211 8789 / 211 8790*
*Fax: +255 22 211 3247 / 211 6635*

*nimrod.mkono@mkono.com*

---

[1] For the circumstances leading to the substitution of Stirling Civil Engineering Ltd ("SCEL") as Claimant, see the Partial Award on Jurisdiction dated 28th October 2005.

# *Legend*

| | | |
|---|---|---|
| *EDF* | = | *European Development Fund* |
| *EDF Rules* | = | *Procedural Rules on Conciliation and Arbitration of Contracts Financed by the EDF (VIII/E/440/90-EN)* |
| *G & T* | = | *Gardiner & Theobald Fairway* |
| *IFF* | = | *Impresa Ing Fortunato Federici SpA (in liquidation in Italy)* |
| *MoW* | = | *Ministry of Works* |
| *NoA* | = | *Notice of Arbitration* |
| *PA1* | = | *First Partial Award dated 28th October 2005* |
| *PA2* | = | *Second (Corrected) Partial Award dated 10th December 2009* |
| *SCEL* | = | *Stirling Civil Engineering Ltd (Claimant)* |

## *Section 1: Introduction*

### *The parties*

1.1     The Claimant is Stirling Civil Engineering Ltd ("SCEL"), a company incorporated in England and Wales.[2] The Respondent is the Government of the United Republic of Tanzania, acting through the MoW.

### *The Contract*

1.2     The dispute between the parties arose out of a contract for the rehabilitation of a 43km stretch of road between Dar es Salaam (Wazo Hill) and Bagamoyo, in Tanzania ("the Contract"), under Works Contract Agreement no. 10050/98/99 dated 7th May 1999.[3] The original parties to the Contract were IFF, a company incorporated under the laws of Italy, and the Respondent (acting through the MoW).

1.3     The EDF Rules, which formed part of the Contract documents, provide (in Article 1) that disputes relating to a contract financed by the EDF shall be by arbitration (see Art 18).

1.4     The arbitration proceedings were commenced by a NoA dated 25th May 2004.

### *The First and Second Partial Awards*

1.5     By a Partial Award made on 28th October 2005 ("PA1"), the Arbitral Tribunal:

     (1)     Directed that Sterling Civil Engineering Ltd be substituted as Claimant in place of IFF, which had been the original contracting party.

     (2)     Directed that the Notice of Arbitration was not time-barred pursuant to Articles 18.1 and 4.2 of the EDF Rules.

     (3)     Directed that the Notice of Arbitration was not time-barred pursuant to Article 68.2 of the Special Conditions of the Contract ("SCC").

     (4)     Dismissed the objections made by the Respondent to the presentation of the claims in the Statement of Claim.

---

[2]     The substitution of SCEL as Claimant in place of IFF was given effect by the Partial Award dated 28th October 2005.

[3]     For a full explanation of the details of and background to the Contract reference should be made to the Corrected Second Partial Award dated 10th December 2009.

1.6     By a Second Corrected Partial Award ("PA2") made on 10th December 2009 (corrected pursuant to Article 37 of the EDF Rules), the Tribunal awarded the Claimant the following sums:

  (1)    Tshs 1,719,944,778 and €6,499,357.60 for prolongation costs (Claims 1 to 3 together).

  (2)    Tshs 41,008,001 for late instruction for Administrative Orders (Claim 5(b)).

  (3)    Tshs 13,339,958 and €50,409.27 for pothole repairs (Claim 6(a)).

  (4)    Tshs 49,017,623[4] and €185,228.65 for reimbursement of original subbase (Claim 6(b)).

  (5)    Tshs 3,347,554 and €12,649.79 for reimbursement of additional traffic maintenance (Claim 7).

  (6)    Tshs 193,810,482 and €732,374 for unpaid VOP diesel (Claim 8).

  (7)    Tshs 248,665,524 and €1,166,819 for failure to pay certified sums (Claim 9).

1.7     By paragraph 1.30 of PA2, the Tribunal also awarded the Claimant its costs of the Preliminary Objections and of PA1 (including the associated fees and expenses paid to the Tribunal by the Claimant).

1.8     Following the publication of PA2, the Tribunal by Arbitral Notice **AN 16** dated 7th January 2010 directed as follows:

  (1)    Claimant to make a submission as to interest and costs by 13th February 2009.

  (2)    Respondent to reply by 13th March 2010.

  (3)    Claimant to reply to the Response by 27th March 2010.

  (4)    The Tribunal to proceed to decide and make the Award.

---

[4]     Although the amount of Tshs awarded under this head was Tshs 49,017,623, the Claimant has based its calculation of interest on the sum of Tshs 49,017,622.

1.9 The Claimant submitted its Submissions on Costs and Interest under cover of a letter dated 10th February 2010 ("CSCI").

1.10 The Respondent submitted its Reply Submissions on Costs and Interest by email addressed to the Arbitral Tribunal and to Claimant's Counsel on 13th March 2010 ("RSCI").

1.11 The Claimant submitted its Reply to Response to Submission on Interest for Award and Costs by email on 27th March 2010 ("CRSCI").

1.12 By email dated 10th May 2010, the Tribunal invited the parties to submit the following information by not later than 17th May 2010:

(1) An indication of current interest rates in Tanzania for Tshs, USD and Euros, and any indication as to whether the rates are likely to alter by 10th June 2010.

(2) A calculation of the amounts due on the Euro elements of the award on the basis of the rate of interest for Euros being applicable to those elements.

(3) A calculation of the interest due on the individual amounts awarded in the PA2 on the assumption that the interest rates applicable are (a) those for Tshs on the Tshs elements and (b) those for both (i) Euros and (ii) USD on the euro elements awarded.

(4) An agreed summary, in terms of principle, of the differences between the parties in terms of interest and costs. This should not be longer than one page.

(5) An agreed summary (if possible) of the monetary difference based on (3) above (or an explanation as to which if any elements could not be calculated).

(6) Copies of all the extracts from the contractual documents on which both parties rely in relation to interest or costs.

1.13 By email from Kesaria & Co dated 17th May 2010, the following was submitted on behalf of the Claimant:

- 5 -

(1)   A letter dated 11th May 2010 from Stanbic Bank confirming the current lending rates of 21% per annum for Tshs and 11.5% per annum for US$ (as Annexure 1).

(2)   The lending rates for TShs and foreign currency published by the Bank of Tanzania ("BOT"), extracted from BOT's economic review.[5]

(3)   The Claimant has calculated and attached (as Annexure 3) the average interest rates based on Stanbic's letter of 28th July 2009 and BOT's rates.

(4)   A Summary of the amounts awarded (in the Second Corrected Partial Award) both in Euros and TShs and the interest accruals for the amounts for each currency.[6]

(5)   Summaries of Respondent's submission on interest calculation and Claimant's response (Annexures 4 and 5 respectively to the email).

(6)   Copies of extracts from contractual documents attached (as Annexures 6 and 7 to the email).

1.14   In this Award, the Claimant's email of 17th May 2010 will be referred to as the "May Submission".

1.15   By an email to both counsel dated 19th May 2010, the Tribunal invited the Respondent to provide its comments on the interest rates and calculations submitted by the Claimant by close of business on Wednesday 26th May 2010.

1.16   By email dated May 2010, Respondent confirmed through counsel that it had nothing further to add to its previous submissions.

---

[5]   It was noted in the covering email that for foreign currency, a uniform rate is applied by BOT without distinguishing the currency, i.e. US$ or €.

[6]   In the covering email, it was noted that for €, the interest rate applied for the initial 120 days is 4% per annum, increasing to 8% per annum after the initial 120 days up to May 2006. (The Tribunal notes that this was in response to an observation made by the Respondent in its Reply dated 13 March 2010, which is dealt with below.) After May 2006, it was stated that the Claimant had applied the average interest rates based on Stanbic Bank and BOT's published rates (as per subparagraph (3) above), As a result of recalculating interest at 4% per annum for the initial 120 days (instead of 8% per annum quoted in the Claimant's submissions), the Claimant accepted that the interest amount in € reduced from €226,583.74 to €112,949.00, i.e. a reduction of €113,834.70.

- 6 -

1.17    This Award deals in turn with (a) to what extent interest should be awarded on the sums found by the Tribunal to be due to the Claimant in the Second CPA; (b) provides a calculation of such interest due up to and including 10th June 2010; (c) assesses to what extent costs should be payable to the Claimant; (d) assesses those costs as payable (including the fees and expenses of the Tribunal).

### *Section 2: Interest*

#### *Introduction*

2.1. The principle that a party awarded sums due to it ordinarily implies that such party should be compensated by virtue of the delay in receipt of payment. In this case, the Tribunal has found that sums due to the Claimant were due as a result of actions or omissions on the part of the Respondent several years ago.

2.2. The Tribunal therefore concludes that it is appropriate that the Claimant should be put in the position that it ought to be in had the Respondent complied with its contractual obligations. The appropriate form of Award is one for interest.

2.3. In the May Submission, the Claimant provided a summary of the interest claimed on the Tshs and Euro elements of the Second Partial Award up to 10th June 2010 as follows:[7]

(1) **Prolongation costs** (Claims 1 to 3):      **Tshs 6,177,180,338** and **€7,491,467**.

   (Amounts awarded:            Tshs 1,719,944,778 and €6,499,357.60.)

(2) **Late instruction for AOs** (Claim 5(b)):      **Tshs 150,084,723**.

   (Amount awarded:            Tshs 41,008,001.)

(3) **Pothole repairs** (Claim 6(a)):      **Tshs 50,363,947** and **€60,018**.

   (Amount awarded:            Tshs 13,339,958 and €50,409.27.)

(4) **Reimbursement of original subbase** (claim 6(b)):

   **Tshs 157,284,605** and **€198,297**.

   (Amount awarded:            Tshs 49,017,623[8] and €185,228.65.)

---

[7]   May Submission, Excel spreadsheet, tabs 1-6.
[8]   See footnote 4 above.

| (5) | **Traffic maintenance** (Claim 7): | **Tshs 9,731,304 and €12,687**. |
|---|---|---|
|  | (Amount awarded: | Tshs 3,347,554 and €12,649.79. |
| (6) | **Unpaid VOP diesel** (Claim 8): | **Tshs 604,712,002 and €786,676**. |
|  | (Amount awarded: | Tshs 193,810,482 and €732,374.) |
| (7) | **Unpaid certificates** (Claim 9): | **Tshs 683,810,673 and €1,258,877**. |
|  | (Amount awarded: | Tshs 248,665,524 and €1,166,819) |

2.4. In this section of the Award, each of the above claims for interest will be considered in turn.

2.5. Prior to doing so, the Tribunal will examine an objection raised by the Respondent in paragraphs 2.6 to 2.8 of the RSCI concerning the rate and type of interest and the application of Article 53 of the Special Conditions of Contract ("SCC").

### *Application of Article 53 of the SCC and simple/compound interest*

2.6. In the RSCI (see paragraph 2.8), it was argued on behalf of the Respondent that the sums due to the Claimant should be calculated as simple interest, not as compound interest. This is said to be a requirement of Article 53 of the SCC, which is set out below in full.

2.7. The Respondent as follows:

*"2.8 According to Article 53.1 of the SCC, interest payment is to be calculated pro rata on the basis of the number of days delayed at the rediscount rate of the issuing institution of the country of the currency of payment. This basis of calculation requires that the computation be based on simple interest and not compounded. The same Article 53.1 of the SCC also requires that the interest amount should not exceed the non-paid principal amount."*

2.8. In the CRSCI, Claimant challenged this assertion. The Claimant argues that the intended meaning and intention of Article 53 SCC and Articles 53.1 and 53.2 of the

General Conditions of Contract ("GCC") read in conjunction defines the interest payable up to a maximum period of delay of 120 days.

2.9. Article 53 of the GCC reads as follows:

### *Delayed Payments*

*53.1    Payment to the Contractor of the amounts due under each of the interim payment certificates and the final statement of account issued by the Supervisor shall be made by the Contracting Authority within 90 days of such certificate or statement being delivered to the Contracting Authority. If the period laid down for payment has been exceeded, the Contractor shall qualify for interest calculated pro rata on the basis of the number of days at the rate specified in the Special Conditions, subject to a minimum period, also specified therein. The Contractor shall be entitled to such payment without prejudice to any other right or remedy under the Contract. In the case of the final statement of account, the interest for the delayed payment shall be calculated on a daily basis at the rate specified in the Special Conditions.*

*53.2    Any default in payment of more than 120 days from the expiry of the period laid down in Article 53.1 shall entitle the Contractor either not to perform the Contract or to terminate it.*

2.10.    Article 53 of the SCC reads as follows:

### Article 53: Delayed Payments

*53.1    Payments to the Contractor of the amounts due under each of the initial (advance) payments, interim payment certificates and the final statement of account issued by the Supervisor, subject to the correct submission of statement of accounts/payment requests/invoices with necessary supporting documents in the manner described in the Contract, shall be made within 90 (ninety) calendar days of such certificate/request/invoice being received by the Contracting Authority. If this period has been exceeded, although the execution of the works has not been contested, the Contractor shall qualify, without reminder, for interest payment calculated pro rata on the basis of the number of days delay (up to a maximum of 120 days) at the rediscount rate of the issuing institution of the country of the currency of payment.*

*For payments in ECU the rate shall be the latest published in the EUROSTAT "ECU SME INFORMATION" under the heading "Operation rates of the EMC (calculation month) and interest rates and yields of ECU investments (%) in the month preceding the one when payment is made.*

*However, the interest for delayed payment may only exceed the total value of the non-paid and non-contested interim payment.*

*Although the Contactor is automatically entitled to interest for delayed payments, he can only exercise this right if he submits, through the Delegate*

- 10 -

> *of the European Commission and not later than 60 days following receipt of the last payment under this Contract, an invoice to the Supervisor.*

2.11.  The Tribunal does not accept that Article 53 of the SCC has any bearing at all either on the type of interest which may be awarded by the Tribunal pursuant to its powers, or in terms of placing a contractual limit on the amount of interest. There is nothing in the language of Article 53 which expressly or impliedly contains such limitations.

2.12.  Indeed, in relation to compound interest, the reference in Article 53 to the "rediscount rate" suggests the contrary.

2.13.  Furthermore, the Tribunal considers that Article 53 of the SCC is concerned with late payment of e.g. amounts due under interim certificates, and is concerned with the application of the contractual machinery in the ordinary course of events, i.e. where there are minor delays in payment. The Tribunal considers that Article 53 is not relevant to the question of what interest is payable on sums awarded by the Tribunal against the Employer several years later, even if those sums include amounts awarded in respect of unpaid interim certificates.

2.14.  As to the 120-day period referred to in Article 53, the Claimant appears implicitly to accept that there is some force in the Respondent's argument that interest should at least be reduced for this initial period, and has indeed recalculated its interest claims to take account of this period.

2.15.  As is apparent from the discussion above, the Tribunal is not persuaded by the Respondent's argument regarding Article 53 of the SCC. Nevertheless, the Tribunal notes the concession made by Claimant and is therefore content to assume that the objection has been conceded. Accordingly, the Tribunal accepts that the rate of interest on the Euro (€) claims for the initial period of 120 days has been recalculated at 4%, as per the email May Submission.

2.16.  As to the simple/compound interest issue, the Tribunal notes that there is no restriction in relation to awards of compound interest in the EDF Rules, nor in the contract, and therefore nothing which would ordinarily prohibit an award of compound interest by the Tribunal.

- 11 -

2.17. Since no other explanation or authority has been cited by the Respondent in support of the proposition, the Tribunal considers that there is no fetter on the Tribunal's power to order interest to be payable on a compound basis, if in all the circumstances of the case the Tribunal considered that it is just and equitable so to do.

2.18. It is important to note that no criticism is made of the Respondent's conduct by the making of such an award. It is often the case that the paying party mistakenly regards compound interest as punitive in comparison to simple interest, and that the latter is viewed as significantly more beneficial to the receiving party than simple interest.

2.19. Of course, when considering compound interest, the key issue is in relation to the period of rests, i.e. how often the accrued interest is compounded and added to the existing amount, on which interest is itself awarded. Here, the Claimant has calculated the interest due on all the amounts claimed on the basis of monthly rests, as the Excel spreadsheet attached as part of the May Submission clearly shows. The Tribunal considers this to be reasonable, and it is therefore accepted in principle. The Tribunal also understands that it is normal practice in Tanzania for banks to measure interest on a compound basis, and that the adoption of monthly rests is not unreasonable.

### *Prolongation costs*

2.20. The calculation of this element is set out on pages 2 to 5 of Section 2 of the CSCI, as modified by the Excel spreadsheet attached as part of the May Submission – see tabs 1-3 (marked respectively "CLAIM 1/INT CLAIM 1 (EURO)/INT CLAIM 1 (TSHS)").

2.21. The first issue is the starting point for this element of the award, which in effect granted the Claimant an extension of time from 6th May 2001 to 12th May 2002. The Claimant has calculated that it is appropriate to commence the interest on the entire amount due from the mid-point of the claim, which it has calculated as 3rd November 2001.

2.22. The Tribunal accepts that this is a reasonable starting point. It is noted that no objection has been taken to this methodology from the Respondent.

2.23. As to the calculation itself, the Tribunal has not double-checked the entire individual spreadsheet figures, several spot checks have not revealed any errors in the calculations.

2.24. Accordingly, the Tribunal awards the Claimant the sums claimed, namely **Tshs 6,177,180,338** and **€7,491,467**.

### *Administrative Orders*

2.25. The calculation of this is set out in the tab of the Excel spreadsheet marked "Claim 5(b) (TSHS)".

2.26. The starting point for this claim has been taken as 4th November 2001. No objection has been taken to this date by the Respondent. The tribunal considers that this is a reasonable starting date.

2.27. The Tribunal considers this claim to be reasonable and therefore awards the Claimant the sum of **Tshs 150,084,723**.

### *Pothole repairs*

2.28. The calculation of this is set out in the two tabs of the Excel spreadsheet marked "CLAIM 6(a) EURO/CLAIM 6(a) TSHS".

2.29. The starting point for this claim has been taken as 15th August 2001. No objection has been taken to this date by the Respondent. The Tribunal considers that this is a reasonable starting date.

2.30. The Tribunal considers this claim to be reasonable and therefore awards the Claimant the sums of **Tshs 50,363,947** and **€60,018**.

### *Reimbursement of original subbase*

2.31. The calculation of this is set out in the two tabs of the Excel spreadsheet marked "Claim 6(b) EURO/Claim 6(b) TSHS".

2.32. The starting point for this claim has been taken as 30th April 2002. No objection has been taken to this date by the Respondent. The Tribunal considers that this is a reasonable starting date. The Tribunal notes that the Claimant has lowered the amount

- 13 -

of interest on the Euro element of the claim to 4% for the first 120 days as noted above.

2.33. The Tribunal considers this claim to be reasonable and therefore awards the Claimant the sums of **Tshs 157,284,605** and **€198,297**.

### *Traffic maintenance*

2.34. The calculation of this is set out in the two tabs of the Excel spreadsheet marked "Claim 7 EURO/Claim 7 TSHS".

2.35. The starting point for this claim has been taken as 29th September 2002. No objection has been taken to this date by the Respondent. The Tribunal considers that this is a reasonable starting date. The Tribunal notes that the Claimant has lowered the amount of interest on the Euro element of the claim to 4% for the first 120 days as noted above.

2.36. The Tribunal considers this claim to be reasonable and therefore awards the Claimant the sums of **Tshs 9,731,304** and **€12,687**.

### *Unpaid VOP diesel*

2.37. The calculation of this is set out in the two tabs of the Excel spreadsheet marked "Claim 8 EURO/Claim 8 TSHS".

2.38. No objection has been taken to this calculation by the Respondent. The Tribunal notes that the Claimant has lowered the amount of interest on the Euro element of the claim to 4% for the first 120 days as noted above.

2.39. The Tribunal considers this claim to be reasonable and therefore awards the Claimant the sums of **Tshs 604,712,002** and **€786,676**.

### *Unpaid certificates*

2.40. The calculation of this is set out in the several tabs of the Excel spreadsheet marked respectively "Interest on Unpaid Certificates/Cert 28 EURO/Cert 30 EURO/Cert 30 TSHS/Cert 31/Cert 36/ Cert 37 EURO/Cert 37 TSHS".

- 14 -

2.41. No objection has been taken to the calculations by the Respondent. The Tribunal considers that the starting date adopted to be reasonable. The Tribunal notes that the Claimant has lowered the amount of interest on the Euro element of the claim to 4% for the first 120 days as noted above.

2.42. The Tribunal considers this claim to be reasonable and therefore awards the Claimant the following sums in respect of interest on unpaid certificates:

   (1)    On Certificate 28 – **Tshs 182,112,371** and **€226,917**.

   (2)    On Certificate 30 – **Tshs 92,092,586** and **€305,904**.

   (3)    On\ Certificate 31 – **€105,297**.

   (4)    Certificate 36 – **€98,204**.

   (5)    Certificate 37 – **Tshs 409,605,716** and **€522,555**.

### *Interest on this Award*

2.43. The Tribunal considers that in relation to sums awarded in this Award on interest and costs, the Claimant should be entitled to simple interest at 8% per annum on all such sums, in whatever currency, payable from the period of 28 days hereof onwards until payment.

### *Section 3: Costs*

#### *Introduction*

3.1. The Arbitral Tribunal's power to deal with costs is contained in Article 40 of the EDF Rules, which provides in material part as follows:

> "*40.2 Except as provided in Article 40.3, the costs of arbitration shall in principle be borne by the unsuccessful Party. However, the Tribunal may apportion each of such costs between the Parties if it determines that apportionment is reasonable, taking into account the circumstances of the case.*
>
> *40.3 With respect to the costs of legal representation and assistance referred to in Article 40.1(e), the Tribunal, taking into account the circumstances of the case, shall be free to determine which Party shall bear such costs or may apportion such costs between the Parties if it determines that apportionment is reasonable.*"

3.2. The Tribunal considers that the Claimant must be considered as the successful party for this purpose, both in terms of the Jurisdiction phase (First Partial Award) and the merits phase (Second Partial Award).

#### *First Partial Award (PA1)*

3.3. In relation to the First Partial Award and the jurisdictional challenges, although there was some measure of success on the part of the Respondent, in that the Claimant made a belated (albeit successful) application to substitute itself in place of IFF in these proceedings, the Tribunal is satisfied that the Claimant should still be regarded as having succeeded.

3.4. However, in terms of costs, the Tribunal is content to award costs on what in English civil procedure terms is known as the "standard basis", pursuant to which only those costs which are reasonably incurred and reasonable in amount may be recovered, and that any doubt as to whether the costs are reasonably incurred or reasonable in amount should be resolved in favour of the paying party (i.e. in this case the Respondent).

3.5. The Tribunal has considered the costs claimed in relation to the jurisdictional part of the arbitral proceedings, and has concluded that for the most part, these are not

unreasonable in amount, nor are they disproportionate to the sums that were at stake. Ignoring the Tribunal's fees, the amount sought in US Dollar terms is in the region of US$85,000, although this is more precisely set out.

3.6.    The Tribunal notes that in the RSCl (see paragraph 1.10 above), the Respondent does not challenge any of the quantum claimed in respect of the jurisdictional phase. Rather, the Respondent queried only the evidential back-up to the costs claimed, asserting in relation to sum individual amounts that there was no proof of payment.

3.7.    In relation to these queries, the Claimant has provided evidence in respect of nearly all of the costs sought, with a notable exception as set out below in respect of witness expenses.

3.8.    The sums claimed in respect of the First Partial Award are set out in the CSCI (Section 3) as follows:

| No. | Item | USD |
|-----|------|-----|
| (1) | G & T – consultancy charges | 14,904 |
| (2) | Kesaria & Co – Legal fees | 33,000 |
| (3) | Tribunal President – fees paid by Claimant | 25,484 |
| (4) | Claimant's Appointed Arbitrator | 63,000 |
| (5) | Witness Travelling Expenses | 2,673 |
| (6) | Witness Hotel Accommodation Expenses | 3,688 |
| (7) | Arbitration Meeting costs | 1,280 |
| (8) | Personnel Expenses | 27,870 |
| (9) | Stationery, Telephone bills, etc | 1,228 |
| | **TOTAL** | **173,127** |

3.9.    The costs claimed in respect of the jurisdictional phase are claimed in USD, although examination of some of the items included shows that several original providers submitted invoices in GBP or were paid in a currency other than USD.

3.10.   The Tribunal has analysed each of the above items as follows:

3.11.   **G & T (consultancy charges):** The Claimant has exhibited three invoices from G & T in respect of the Bagamoyo Road project:

> (1)    Invoice no 5880-011/330 dated 10 August 2005 for £15,053.80.

> (2)    Invoice no 5880-12.366 dated 8 September 2005 for £10,516.15.

> (3)    Invoice no 5880-13.396 dated 10 October 2005 for £5,392.50.

3.12.   The total of the above three invoices is £30,962.45. Since no query apart from proof of payment was raised by the Respondent in the RSCI, which proof was supplied by Claimant in the CRSCI, the Tribunal notes that there is no objection to these amounts. The Tribunal considers this claim to be reasonable.

3.13.   The Tribunal therefore allows this sum in its entirety, and awards the Claimant the sum of **£30,962.45**.

3.14.   **Kesaria & Co expenses:** the sum claimed in respect of the legal expenses is US$33,000, which is estimated as the amount referable to the jurisdictional phase, out of a total invoice amount of US$95,051.

3.15.   The Tribunal has not seen any evidence to support this division between the First and Second Partial Awards, the Tribunal notes that the balance of the monies is claimed in respect of the Second Partial Award, and is therefore content to accept the Claimant's assessment.

3.16.   Since no query has been made in respect of these costs accept proof of settlement (which has since been supplied), the Tribunal allows this claim in its entirety.

3.17.   The Tribunal awards the Claimant the sum of **US$33,000** in respect of the legal fees and expenses of Kesaria & Co in respect of the First Partial Award.

- 18 -

3.18. **Tribunal President**: This amount is claimed as **US$25,484**. The original fee note is in the sum of £14,157.84. Since no objection has been made, this amount is payable in full.

3.19. The Tribunal therefore awards the Claimant the sum of **£14,157.84** for the fees of the Tribunal President in respect of the First Partial Award.

3.20. **Claimant's appointed Arbitrator**: the Claimant has claimed the sum of US$63,000 in respect of these fees.

3.21. The breakdown of this sum is said to be in two parts, for £20,000 and £15,000, totalling £35,000, but both in respect of invoice no M99895 dated 31 October 2005 from Howes Percival addressed to IFF. It is unclear where the Claimant has derived the figure of £35,000.

3.22. In fact, the fee note in question is for the sum of £34,242.52 (i.e. slightly less than the amount of £35,000 claimed). It is accepted by Respondent that this sum was borne by the Claimant. Since no other objection is made, the Tribunal awards the Claimant this sum in full.

3.23. The Tribunal therefore awards the Claimant the sum of **£34,242.52** as the sum paid to the Claimant's appointed Tribunal member in respect of the fees in connection with the First Partial Award.

3.24. **Witness Travelling Expenses**: The sum claimed under this head is US$2,673.

3.25. The analysis of the receipts submitted and attached to the CSCI shows that the following sums appear to have been claimed and paid by or on behalf of the Claimant for witness travelling expenses of Mr De Souza:

   (1)     US$386 for an airfare on 2nd July 2005.

   (2)     US$391 for an airfare on 1st August 2005.

   (3)     US$400 for an airfare on 2nd August 2005.

   (4)     US$488 for an airfare on 2nd August 2005.

   (5)     US$490 for an airfare on 22nd August 2005.

- 19 -

(6)      US$518 for an airfare on 9th September 2005.

Total: US$2,673.

3.26.   Since evidence of receipt of payment has been provided by the Claimant and not challenged by the Respondent, the Tribunal allows this sum in full.

3.27.   The Tribunal therefore awards the Claimant the total sum of **US$2,673** for the travelling expenses for Mr De Souza in relation to the First Partial Award.

3.28.   **Witness Hotel Accommodation expenses**: the total sum claimed under this heading is US$3,688.

3.29.   An examination of the invoices submitted shows that the original hotel invoices were rendered (and payment made) in Tshs.

3.30.   The three invoices are for the following amounts:

(1)      Invoice dated 20th July 2005 for Tshs 1,462,925.

(2)      Invoice dated 16th August 2005 for Tshs 408,706.

(3)      Invoice dated 5th September 2005 for Tshs 1,240,700.

Total: Tshs 3,112,331.

3.31.   The Tribunal notes that there is no objection to this item, and must assume payment was made in Tshs, rather than in USD. The Tribunal considers the sum claimed as reasonable.

3.32.   The Tribunal therefore awards the Claimant the sum of **Tshs 3,112,331** under this heading.

3.33.   **Arbitration Meeting Costs**: The sum claimed under this heading is US$1,280.

3.34.   The original invoice from the Golden Tulip Hotel is in USD for this sum.

3.35.   No challenge is made to the amount. The Tribunal therefore awards the Claimant the sum of **US$1,280** for the Arbitration meeting costs.

3.36.   **Personnel Expenses**: The Claimant claims a total of US$27,870 under this heading.

- 20 -

3.37.  The only information to support the basis for this claim is stated to be "Office
       Expenses incurred at Dar for Preparation of Preliminary Objection and Hearing".

3.38.  There is no other justification provided, and despite the lack of challenge by the
       Respondent to this head of claim (other than to assert lack of receipt of money by the
       witnesses), the Tribunal does not consider that it is reasonable to allow any amount in
       respect of this heading.

3.39.  The Tribunal therefore awards no sum under this heading.

3.40.  **Stationery, Telephone bills**: The Claimant seeks US$1,228 under this heading.

3.41.  There are several individual amounts claimed, as set out on page B10 of the CSCI.

3.42.  Of the amounts claimed, the Tribunal considers that the following individual elements
       are reasonably and properly incurred and should be reimbursed by the Respondent in
       the currency of the invoice in question:

       (1)     Attestation fees: Tshs 200,000.

       (2)     Translation fees: US$140.

       (3)     Certification fees: Tshs 162,180.

       (4)     Certification fees: US$128.

3.43.  Of the remaining amounts claimed, the Tribunal considers that the items are either not
       claimable in principle (fuel consumed, printer cartridge), or not sufficiently
       substantiated to warrant any apportionment (phone/fax bills).

3.44.  The Tribunal therefore awards the Claimant the sums of **US$268** and **Tshs 362,180**
       under this heading.

3.45.  In summary, for the costs claimed under the First Partial Award, the Tribunal awards
       the Claimant:

| Item | £ | Tshs | USD |
|------|------|------|------|
| G & T – consultancy charges | 30,962.45 | | |

| | | | |
|---|---|---|---|
| Kesaria & Co – Legal fees | | | 33,000 |
| Tribunal President – fees paid by Claimant | 14,157.84 | | |
| Claimant's Appointed Arbitrator | 34,242.52 | | |
| Witness Travelling Expenses | | | 2,673 |
| Witness Hotel Accommodation Expenses | | 3,112,331 | |
| Arbitration Meeting costs | | | 1,280 |
| Personnel Expenses | | | Nil |
| Stationery, Telephone bills, etc | | 362,180 | 268 |
| **TOTALS** | **79,362.81** | **3,474,511** | **37,221** |

### *Second Partial Award (PA2)*

3.46.  The total costs claimed under the merits phase is US$596,389.61.

3.47.  Although this amount is significantly more than the costs of the First Partial Award, the Tribunal does not regard it in general as disproportionate to the sums at issue, and notes that the two largest elements of this claim are the fees of G & T (claimed as US$223,515) and Kesaria & Co (claimed as US$165,000).

3.48.  The Tribunal notes that the costs claimed include those of the Tribunal members, amounting to approximately US$192,234.

3.49.  The breakdown of the sums claimed (in US$) is set out below (figures are rounded up and taken from the table on page C1 of the CSCI).

| No | Item | USD |
|---|---|---|
| (1) | Arbitration Hearing Expenses | 1,475 |
| | Photocopy and binding charges | 634 |

- 22 -

| (2) | Tribunal President – fees paid by Claimant | 51,031 |
|-----|---------------------------------------------|--------|
| (3) | Claimant's Appointed Arbitrator | 77,068 |
| (4) | G & T – consultancy charges | 223,515 |
| (5) | Kesaria & Co – Legal fees | 165,000 |
| (6) | Witness Accommodation/Travelling Expenses | 2,240 |
| (7) | Witness Fees (Maragesi) | 2,823 |
| (8) | Witness Fees (De Souza) | 8,468 |
| (9) | Extra half share of Tribunal President's Fees | 41,485 |
| (7) | Respondent's Arbitrator Fees paid by Claimant | 22,650 |

**TOTAL**   **596,389**

3.50. The costs claimed in respect of the jurisdictional phase are claimed in (*inter alia*) USD, although examination of some of the items included shows that several original providers submitted invoices in GBP or were paid in a currency other than USD.

3.51. The Tribunal has analysed each of the above items as follows:

3.52. **Arbitration hearing expenses:** the US$ equivalent claimed under this head is US$1,475.

3.53. The three individual invoices which make up this amount are for Tshs 1,242,000, US$360 and Tshs 207,000.

3.54. Since no objection has been made to these claimed apart from authentication of payment, the Tribunal allows this claim in full, in the currencies of the invoices copied behind page C2 of the CSCI.

3.55. The Tribunal therefore allows the sums of Tshs 1,449,000 and US$360.

3.56. **Photocopying and binding charges:** the equivalent US$ amount claimed is US$634.

3.57.  The original invoice is for Tshs 823,665 (behind page C11 of the CSCI).

3.58.  No objection has been taken to this head. The Tribunal therefore allows this claim in full. The Tribunal awards the Claimant the sum of Tshs 823,665 under this heading.

3.59.  **Tribunal President's fees**: the equivalent US$ amount claimed is US$51,031.

3.60.  The Tribunal President's original fee notes attached to the CSCI are all in £ and amount to £30,928.04, including an amount of £5,000 paid on 23rd March 2005. The Tribunal awards this sum in its entirety.

3.61.  **Claimant's Arbitrator's fees**: the equivalent US$ amount claimed is US$77,068.

3.62.  The original invoices are stated to be for £10,545.56, £28,325, £4,812.50 and £3,025 (see page C4 of the CSCI).

3.63.  In fact, invoice no M120689 dated 22nd October 2008 is for a total of £14,058.10, but records a payment on account received previously.

3.64.  The revised amount is therefore £50,220.06. The Tribunal awards the Claimant this sum in its entirety.

3.65.  **G & T fees**: the equivalent US$ amount claimed is US$223,515. The original invoices (listed on and set out individually behind page C5 of the CSCI) add up to £136,928.58.

3.66.  There is no objection to this head of claim from the Respondent. The Tribunal does not consider the amounts claimed to be unreasonable in amount, or unreasonably incurred. The Tribunal recalls that it relied heavily upon the report of Mr McSheaffrey, as well as his considerable assistance as an expert accounting witness for the quantum issues which arose in the proceedings.

3.67.  The Tribunal therefore allows this element of the claim in full, albeit in the original currency. The Tribunal therefore awards the Claimant the sum of £136,298.58 under this heading.

- 24 -

3.68.   **Kesaria & Co fees:** the equivalent US$ amount claimed is US$165,000. This is made up of invoices totalling US$198,000, and subtracting the amount of US$33,000 which was applied to the First Partial Award.

3.69.   The Tribunal is satisfied that the fees were properly incurred and due (whether or not in fact paid by the Claimant) and therefore awards the Claimant the sum of US$165,000 under this heading.

3.70.   **Witness Accommodation/Travelling Expenses:** the equivalent US$ amount claimed is US$2,240.

3.71.   The three originating invoices are referred to on page C7 of the CSCI and are claimed in US$. In fact, the invoices (copies are behind page C7) show that they were rendered as follows: (i) one for US$425 dated 15th September 2008; (ii) one for Tshs 1,985,200 on 26th September 2008; and (iii) one for Tshs 192,900 on 26th September 2008.

3.72.   The Tribunal considers that the invoices are reasonable and were properly incurred. The Tribunal therefore awards the Claimant the sums of Tshs 2,178,100 and US$425 under this heading.

3.73.   Witness Fees: there are two sums claimed here, one for €6,000 and one for €2,000, as per two undated invoices, in respect of the written witness statements of Mr De Souza and Mr Maragesi on behalf of the Claimant.

3.74.   It is unclear on what basis these amounts are said to be due and recoverable by the Claimant from the Respondent as costs, neither witness in question being a professional expert, and in neither case is it said that the fees claimed are for expenses (as these have been claimed separately).

3.75.   The Tribunal has some doubt as whether these amounts are recoverable in principle, and proposes to resolve that doubt in favour of the Respondent by denying these two claims.

3.76.   **Extra half share of Tribunal President's Fees:** the sterling amount under this heading is in fact £25,928.04 (see page C9 of the CSCI). The Respondent has not

denied that it failed to make the payments, which were duly made by the Claimant. The Tribunal awards the Claimant this amount in full in the sum of £25,928.04.

3.77. **Payment of Fees of Respondent's Arbitrator**: The actual amount of the fees of the Respondent's appointed Arbitrator paid by Claimant for the Second Partial Award is US$22,650. The Respondent accepts that payment was not made. The Tribunal awards the Claimant the full sum, i.e. US$22,650.

### *Final Award*

3.78. The Claimant has through its counsel agreed to pay the fees of its appointed Arbitrator incurred in connection with the preparation of this Final Award in the sum of £18,600. The Claimant has also through its counsel undertaken to pay the fees of the President in the sum of £14,250 and of the Respondent's appointed Arbitrator in the sum of US$6,450.

### *Section 4: Conclusion*

4.1. The Tribunal has awarded sums to the Claimant as above in four currencies: Sterling (£), US Dollars (US$), Euros (€) and Tanzanian Shillings (Tshs).

4.2. For ease of reference, the table below summarises (by reference to the relevant paragraph of this Final Award) for each of the four currencies the individual and total amounts awarded for interest and costs.

| INTEREST CLAIMS | | | | |
|---|---|---|---|---|
| **Para no(s)** | **GBP (£)** | **USD ($)** | **Euros (€)** | **Tshs** |
| **2.24** | | | 7,491,467 | 6,177,180,338 |
| **2.27** | | | | 150,084,723 |
| **2.30** | | | 60,018 | 50,363,947 |
| **2.33** | | | 198,297 | 157,284,605 |
| **2.36** | | | 12,687 | 9,731,304 |

| | | | |
|---|---|---:|---:|
| **2.39** | | 786,676 | 604,712,002 |
| **2.42 (1)** | | 226,917 | 182,112,371 |
| **2.42 (2)** | | 305,904 | 92,092,586 |
| **2.42 (3)** | | 105,297 | |
| **2.42 (4)** | | 98,204 | |
| **2.42 (5)** | | 522,555 | 409,605,716 |
| **TOTALS** | | **€9,808,022** | **Tshs 7,833,167,592** |

| COSTS CLAIMS | | | | |
|---|---|---|---|---|
| **Para no(s)** | **GBP (£)** | **USD ($)** | **Euros (€)** | **Tshs** |
| **3.13** | 30,962.45 | | | |
| **3.17** | | 33,000 | | |
| **3.19** | 14,157.84 | | | |
| **3.23** | 34,242.52 | | | |
| **3.27** | | 2,673 | | |
| **3.32** | | | | 3,112,331 |
| **3.35** | | 1,280 | | |
| **3.44** | | 268 | | 362,180 |
| **3.55** | | 360 | | 1,449,000 |
| **3.58** | | | | 823,665 |
| **3.60** | 30,928.04 | | | |
| **3.64** | 50,220.06 | | | |
| **3.67** | 136,298.58 | | | |
| **3.69** | | 165,000 | | |
| **3.72** | | 425 | | 2,178,100 |

| | | | | |
|---|---|---|---|---|
| **3.76** | 25,928.04 | | | |
| **3.77** | | 22,650 | | |
| **TOTALS** | **£322,737.53** | **US$225,656** | | **Tshs 7,925,276** |
| **FINAL AWARD COSTS** | | | | |
| **3.78** | **32,850** | **6,450** | | |
| **GRAND** | | | | |
| **TOTALS** | **£355,587.53** | **US$232,106** | **€9,808,022** | **Tshs 7,841,092,868** |

**ACCORDINGLY**

**WE, Anthony Bingham, Louis Flannery and Kesogukewele Msita**

**AWARD AND DIRECT as follows:**

The Respondent do within 90 days of the date of this Award pay the Claimant the following sums:

1. In respect of interest claimed, the sum of €9,808,022 and Tshs 7,833,167,592.

2. In respect of the costs of the First and Second Partial Awards, the sums of £322,737.53, US$ 225,656 and Tshs 7,925,276.

3. In respect of the costs of this Final Award, the sums of £32,850 and US$6,450.

**Seat of Arbitration:** Dar es Salaam, Tanzania

**10th June 2010**

**Anthony Bingham (President)**

**Louis Flannery**

**Kesogukewele M.I.M.Msita**

- 28 -